**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge William J. Martìnez**

Civil Action No. 13-cv-03070-WJM

DANIEL ACOSTA,

    Applicant,

v.

CHARLES DANIELS,

    Respondent.

**ORDER DENYING APPLICATION FOR A WRIT OF HABEAS CORPUS**

This matter comes before the Court on the Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Docket No. 5), filed, *pro se*, by Applicant, Daniel Acosta. On October 30, 2015, the Tenth Circuit Court of Appeals reversed a May 17, 2014 Order issued by Senior Judge Lewis T. Babcock (Docket No. 27) dismissing this action during preliminary review for failure to exhaust administrative remedies. *See Daniel Acosta v. Charles Daniels*, No. 14-01193 (10th Cir. October 30, 2014) (unpublished) (Docket No. 38). The case was remanded for further proceedings and drawn to the undersigned. Respondent has filed a Response to Amend[ed] Application for Writ of Habeas Corpus (Docket No. 44). Applicant was afforded an opportunity to file a Reply. (Docket No. 45). Having considered the Amended Application and the Government's Response, the Court will dismiss this action for the reasons discussed below.

## I. Background

On May 23, 2012, Applicant was issued an incident report for Assaulting any Person (Code 101)[1] while incarcerated at the Federal Correctional Institution, Three Rivers, Texas. (Docket No. 44-1, Declaration of Charles Bickle at ¶ 7; *id.* at 21-22). The report provided the following description of the incident:

> An SIS [Special Investigative Services] investigation completed on 5/23/2012, at 11:00 a.m., revealed that [on March 28, 2012, at 8:28 a.m.] Acosta, Daniel, #89278-079, [ran] up to inmate Estrada, Danny # 11800-078, who [was] being assaulted by [other inmates], and assault[ed] him by kicking him once with his right foot and punching him fourteen (14) times with a right closed fist. Acosta back[ed] up for a second or two then return[ed] and kick[ed] Estrada with his right foot and punch[ed] him numerous times with right and left closed fist. Acosta again back[ed] up for two seconds and then kick[ed] Estrada in the right side of the face before he walk[ed] off. Acosta sustained no injuries
> . . . Inmate Estrada sustained contusions, swelling of the forehead, and was bleeding from the nose and left ear.

(Docket No. 44-1 at 5-6; *see also* March 28, 2012 Bureau of Prisons Health Services Encounter for Danny Estrada, *id.* at 41-43).

An SIS memorandum prepared by SIS Lieutenant D. Munoz, dated May 23, 2012, lists the "assaultive actions of each inmate identified after reviewing the Nice Vision Camera system for 3-28-12 at approximately 8:28 a.m." (*Id.* at 25). The SIS Lieutenant's description of Applicant's actions in the memorandum is quoted in the incident report charging Applicant with assault. (*Id.* at 29; *see also id.* at 25). A separate SIS Inmate Investigative Report (redacted) contained additional statements

---

[1]The BOP's Prohibited Acts and Available Sanctions are codified at 28 C.F.R. § 541.3 (Table 1). Code 101 prohibits: "Assaulting any person, . . . (a charge for assaulting any person at this level is to be used only when serious physical injury has been attempted or accomplished)."

from staff who responded to the incident, as well as photographs of the injured inmates. (Docket No. 44-2, at 14-33; No. 44-1, at 45).

Applicant received a copy of the incident report on May 23, 2012. (Docket No. 44-1, Bickle Decl., at ¶9; *id.* at 23). After being advised of his rights, Applicant responded that he "waive[d] no rights, remedies and defenses." (*Id.*).

On May 25, 2012, Applicant was provided a Notice of Disciplinary Hearing Before the DHO [Disciplinary Hearing Officer] and a written notice of his rights before the DHO. (Docket No. 44-1, Bickle Decl., at ¶ 10; No. 44-2, at 11). Applicant did not request any witnesses, evidence, or a staff representative. (*Id.* at 12).

A disciplinary hearing was held by DHO Charles Bickle on May 31, 2012. (Docket No. 44-1, Bickle Decl. at ¶11; *id.* at 17). The charge of assaulting any person (Code 101) was changed to assaulting any person–attempted serious assault (Code 101A). (Docket No. 44-1 at 19). During the hearing, Applicant requested the video footage of the incident as a "witness" to show that, although he did participate in the assault, he did not "seriously assault the victim" or kick him in the head. (Docket No. 44-1, Bickle Decl. at ¶ 11; *id.* at 17). The DHO explained to Applicant that the video footage was to be used as evidence, not as a witness, and that BOP staff had thoroughly reviewed the footage and provided their findings in the Special Investigative Report, which the DHO had considered as documentary evidence. (*Id.*, Bickle Decl. at ¶ 11).

After considering Applicant's statement at the hearing, the SIS investigative memorandum explaining what was shown on the videotape of the incident, the post-

assault medical assessment for the victim, and photographs of the victim (Docket No. 44-1 at 18-19, 41-43, 45; No. 44-2, at 8-9), the DHO concluded that Applicant had committed the prohibited act of Assaulting any Person–Attempted Serious Assault (Code 101A). (Docket No. 44-1, at 19.) Applicant was sanctioned with, *inter alia*, 40 days of lost good conduct time. (*Id.* at 20).

On August 8, 2012, upon reconsideration of the evidence, the DHO determined that "based on the type of assault and the severity in which it was carried out, the charge of assaulting any person, Code 101 was more appropriate. (*Id.* at 14-15). The DHO reimposed the original sanctions, including, *inter alia*, 40 days of lost good conduct time. (*Id.* at 16).

A copy of the Amended DHO Report was provided to Applicant on August 9, 2012. (*Id.*).

After exhausting his administrative remedies, Applicant initiated this proceeding under 28 U.S.C. § 2241. In the Amended Application, he asserts that Applicant asserts that the prison disciplinary proceeding violated his federal due process rights because: (1) the DHO denied his request to play the video camera footage of the incident at the hearing and instead relied on an SIS agent's summary of what was depicted on the videotape; (2) the DHO failed to provide a meaningful explanation of the evidence relied on to support his conclusion that Applicant was guilty of a Code 101 violation; and, (3) the evidence did not support Applicant's disciplinary conviction. (ECF No. 5 at 3-4).

## II. Legal Standards

### A. § 2241 Actions

A section 2241 habeas proceeding is "an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *McIntosh v. U.S. Parole Common*, 115 F.3d 809, 811 (10th Cir.1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). A § 2241 application must be filed in the district where the prisoner is confined." *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir.1996). "[J]urisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985).[2]

Prison disciplinary proceedings that result in the deprivation of good-time credits may be challenged in a § 2241 proceeding. *McIntosh*, 115 F.3d at 811-12.

### B. *Pro Se* Litigant

Applicant is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d

---

[2] Applicant is a federal prisoner presently incarcerated at USP-Canaan, in Waymart, Pennsylvania. At the time he initiated this action, he was incarcerated at USP-Florence, Colorado.

1106, 1110 (10th Cir. 1991). A court may not assume that an applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *Pro se* status does not entitle the litigant to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### C.  Due Process

"It is well settled 'that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment.'" *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007) (applying law to federal prisoner) (quoting *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir.1996) (internal quotation marks and citation omitted)).  However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

> Where a prison disciplinary hearing may result in the loss of good time credits, . . . the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67).

In *Wolff*, the Supreme Court recognized that "the inmate . . .should be allowed to call witnesses and present documentary evidence in his defense when permitting him to

do so will not be unduly hazardous to institutional safety or correctional goals." 418 U.S. at 566.  Prison officials are required to consider a prisoner's request to call a particular witness or for documentary evidence on an individualized basis. *See Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006).  However, a denial of witnesses or documentary evidence does not violate due process where the error was harmless.  *Id.*

In addition, to comport with due process, there must be *some* evidence to support a disciplinary conviction.  *Hill*, 472 U.S. at 454.  "Ascertaining whether this standard is satisfied does not require examination of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455-56.  A disciplinary board's decision can be upheld by a reviewing court "even if the evidence supporting the decision is 'meager.'" *Mitchell*, 80 F.3d at 1445 (10th Cir. 1996) (quoting *Hill*, 472 U.S. at 457).

### III.  Analysis

#### A.  Refusal to Play Video Camera Footage at Hearing

Applicant first claims that the DHO's refusal to play the video camera footage at the DHO hearing constitutes the denial of a requested witness, or possibly, the denial of evidence favorable to the defense. (ECF No. 5 at 3).

In *Howard v. United States Bureau of Prisons*, 487 F.3d 808, 814-15 (10th Cir. 2007), the Tenth Circuit determined that the petitioner's due process rights were violated where: the DHO refused the petitioner's request that he review a videotape of the incident before imposing disciplinary sanctions; there was no suggestion that producing the videotape would be unduly hazardous to institutional safety or

correctional goals; and, it was not clear that the refusal to review the videotape was harmless. The Circuit Court concluded that "[t]he DHO's unjustifiable refusal to produce and review [the videotape that recorded the incident] deprived Mr. Howard of the process due him." *Id.* at 814.

This case is factually distinguishable from *Howard*, where prison officials denied the petitioner's request for staff to review the videotaped records of the incident, and, therefore, evidence of the contents of the videotape was not presented at the disciplinary hearing. *See Howard*, 487 F.3d at 810-11, 813-14. By contrast, in Applicant's disciplinary proceeding, prison officials did review the videotape footage and summarized its contents in the SIS memorandum that was considered by the DHO. As such, there was not a complete failure to "produce and review" the videotaped footage, which would trigger a due process violation under *Howard*. *See, e.g.*, *Pinson v. Daniels,* Case No. 12-cv-03006-RM, 2014 WL 984907, at *9 (D. Colo. March 13, 2014) (distinguishing the petitioner's claim from *Howard* because "the videotape was produced, the investigating officer reviewed the tape, and he provided a statement regarding the details of what he saw for consideration by the DHO").

In *Deberry v. Berkebile*, No. 13-cv-01926-RBJ, 2014 WL 1100184 (D. Colo. March 17, 2014), the applicant contended that his due process rights were violated when he was convicted of a disciplinary offense based on a BOP staff member's summary of the videotaped footage of the incident because the DHO denied the applicant's request to review the videotape and to play it at the disciplinary hearing. *Id.* at **2-3. District Judge R. Brooke Jackson granted the § 2241 application, concluding that the refusal to allow the applicant to review the video footage was in error, where

the Respondent conceded that there was no undue hazard to institutional safety or correctional goals in permitting the applicant to view the particular footage at issue, and Respondent could not demonstrate that the constitutional error was not harmless. *Id.* at *3.

Unlike the circumstances in *Deberry*, the record demonstrates that any error resulting from the DHO's refusal to play the videotape footage of the incident at Applicant's disciplinary hearing was harmless.[3] Applicant disputes the SIS Lieutenant's report that the video footage showed him kicking the victim in the face. However, even if Applicant did not kick the victim in the face, he admitted to participating in the assault and does not specifically contest the SIS Lieutenant's statements that he punched and kicked the victim several times while the victim lay on the ground. There was no evidence that the victim's injuries, as demonstrated by the photographs of the victim and the medical evaluation report, were caused solely by a single kick to the face. As such, Applicant's contention that he did not kick the victim in the face, even if true, would not have affected the outcome of the DHO hearing.

Accordingly, Applicant cannot prevail on his first claim for relief.

### B. Failure of DHO to Provide a Meaningful Explanation of Decision

Applicant next claims that the DHO failed to provide an adequate statement of the evidence upon which he relied to conclude that Applicant was guilty of a Code 101 assault. (ECF No. 5 at 3). Applicant's claim is contradicted by the record.

---

[3] In the Response to the Amend[ed] Application, Respondent did not address whether there was any undue hazard to institutional safety or correctional goals in permitting Applicant to view the videotaped footage.

The DHO filled out a form titled Amended "Disciplinary Hearing Report." (Docket No. 44-1 at 13-16). In a section labeled "Specific Evidence Relied on to Support Findings," the DHO explained that he relied on the written statement of the reporting officer, which was based on an SIS investigation; the SIS investigative memorandum explaining what was depicted on the videotape of the incident; the medical assessment for the victim, inmate Estrada; and, Applicant's statement at the hearing. (*Id.* at 15).

The Court finds that the DHO's written statement meets the due process requirements set forth in *Wolff*. *See, e.g., Mitchell*, 80 F.3d at 1445 (holding that written statement that inmate was found guilty on the basis of officer's report satisfied *Wolff*); *Taylor v. Wallace*, 931 F.2d 698, 703 (10th Cir.1991) (holding that written statement that inmate was found guilty on the basis of confidential witness testimony satisfied *Wolff* ).

Accordingly, Applicant cannot prevail on his second claim.

### C. Insufficient Evidence to Support Disciplinary Conviction

Applicant contends that there was insufficient evidence to support his disciplinary conviction for a Code 101 assault because the SIS report relied on by the DHO does not show that Applicant was involved in the incident, or that he assaulted another inmate. (ECF No. 5 at 3-4). Applicant further argues that the DHO's statement that he admitted his involvement in the incident is false because he has consistently denied his guilt. (*Id.* at 4).

Based on the evidence considered, the DHO concluded:

> You admit to the DHO you were involved in the assault but did not kick the inmate in the head. It was noted in the review of the evidence, specifically a review of the CCTV video of the incident by institution staff, that you

> began to assault [the victim][4] by punching and kicking him numerous times while he was on the ground in a defenseless position. After stopping the initial assault you returned and began punching and kicking [the victim] numerous times again, [the victim] never attempted to protect himself. You stopped the assault a second time and then returned again to continue the assault. It is clear to the DHO that your actions were meant to inflict severe injury to the victim in this case. [The victim] was unable to defend against your assault and you continued even though it was apparent [the victim] was no threat or danger to you.

(ECF No. 44-1, at 15).

Applicant's contention that the DHO falsely stated in the DHO report that Applicant admitted his involvement in the assault is not supported by the record. Indeed, in Applicant's Regional Administrative Remedy Appeal of his original disciplinary conviction, he argued that he was guilty of a Code 224,[5] not a Code 101A, because inmate Estrada's injuries were not serious. (*See* Docket No. 13-2, at 15).

The medical assessment for the victim, which was considered by the DHO, demonstrates that the victim suffered contusions, swelling of the forehead, and bleeding from the nose and left ear as a result of Applicant's actions. (ECF No. 44-1, at 15; *see also id.* at 41-43). The term "serious physical injury" as used in Code 101 is not defined in the BOP regulation. Even if it is debatable whether the victim's injuries were "serious," it is not the court's function to reweigh the evidence. *See Hill*, 472 U.S. at 455. *See also id.* (the due process requirement that a modicum of evidence is

---

[4] The Court notes that in Section V. of the DHO Report, DHO Bickle identifies the victim as "Inmate Ramirez." (ECF No. 44-1 at 15). However, DHO Bickle states in his Declaration that the references to Inmate Ramirez were a typographical error. (ECF No. 44-1, Bickle Decl. at ¶20). Elsewhere in the Report, the DHO names the victim correctly as inmate Estrada. (*Id.* at 15).

[5] Under Table 1 of the BOP's Prohibited Acts and Available Sanctions, an inmate commits a Code 224 assault "when less serious physical injury or contact has been attempted or accomplished by an inmate." *See* 28 C.F.R. § 541.3 (Table 1).

necessary to support a decision to revoke good time credits "does [not] imply that a disciplinary board's factual findings or decisions with respect to appropriate punishment are subject to second-guessing upon review).

The Court finds that the evidence relied on by the DHO is more than meager and is sufficient to support the DHO's conclusion that Applicant was guilty of a Code 101 violation for assaulting another person (serious physical injury). *See e.g. Pinson v. Berkebile*, No. 14-1108, 576 F. App'x 710, 713 (10th Cir. Aug. 6, 2014) (unpublished) (concluding that guard's incident report and the investigating officer's recounting of what he had seen on the videotape of the incident was sufficient evidence to support disciplinary conviction).

Because Applicant has failed to demonstrate a federal due process violation in conjunction with the prison disciplinary proceeding, he is not entitled to federal habeas corpus relief. Accordingly, it is

ORDERED that the Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Docket No. 5), filed *pro se* by Applicant, Daniel Acosta, is DENIED and this case is DISMISSED with prejudice. It is

FURTHER ORDERED that Applicant's Objection to Magistrate('s) Minute Order (ECF No. 46), in which he objects to a July 23, 2015 Minute Order issued by Magistrate Judge Michael E. Hegarty, which implicitly accepts the Respondent's Response to Amend[ed] Application for Writ of Habeas Corpus and allows the Applicant to file a Reply in support of the Amended Application within 30 days, is OVERRULED because the Minute Order is not clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied for the purpose of appeal.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Applicant files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

Dated this 16th day of November, 2015.

BY THE COURT:

_____
William J. Martínez
United States District Judge